### COOGAN v. BELLER.

(Supreme Court, Appellate Term. April 10, 1908.)

1. BROKERS—EVIDENCE OF EMPLOYMENT.
In an action by a real estate broker for commissions, evidence examined, and *held* not sufficient to show his employment.

2. SAME—RIGHT TO COMMISSIONS—PROCURING CAUSE—EVIDENCE.
In an action by a broker for commissions for leasing premises, evidence examined, and *held* not sufficient to show that his efforts were the procuring cause of the lease.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 8, Brokers, §§ 116, 117.]

Dayton, J., dissenting.

Appeal from Municipal Court, Borough of Manhattan, Fourth District.

Action by Thomas Coogan against Abraham Beller, individually and as trustee for himself and others. Judgment for plaintiff, and defendant appeals. Reversed, and new trial ordered.

Argued before GILDERSLEEVE, P. J., and SEABURY and DAYTON, JJ.

Adams & Hahn, for appellant.
James A. Foley, for respondent.

PER CURIAM. Dr. Eli P. Miller and wife owned certain premises in West Forty-Sixth street, in the city of New York, which, on

April 27, 1906, they contracted to sell to one Max Meyer. This contract was assigned to the defendant herein, Abraham Beller, and title to said premises passed to him, by proper conveyance, on June 1, 1906. Meyer was associated in business with Beller, and retained some interest in the property. In this transaction of purchase and sale the plaintiff was the agent, and received from Beller, for commissions, $1,000 at the time the contract was signed and $1,000 at the closing of title on June 1, 1906, being 1 per cent. of the purchase price. Dr. Miller, desiring to remain in occupation of the premises, made an agreement in writing with Mr. Beller, dated May 11, 1906, to lease the same for 11 months from June 1, 1906. After a lapse of more than six months the plaintiff first made known to the defendant his claim for commission as agent for defendant in procuring Miller as a tenant. Defendant refused to pay. Plaintiff brought this action, and, after trial by the court, recovered judgment for commission as claimed. The plaintiff and defendant never met until they met in court upon the day of trial. The plaintiff based his authority to act for the defendant upon his alleged employment by Max Meyer.

Three issues are presented: (1) Did Meyer employ the plaintiff? (2) If so employed, did Meyer have authority to bind the defendant? (3) Were the plaintiff's efforts the procuring cause?

On the first question there is a conflict of testimony. The plaintiff testified that on the day of the execution of the contract of purchase, while riding uptown, Meyer said to him:

" 'Now, Mr. Coogan, we have secured the property. Now you can earn another commission by renting the property for us.' That in reply he said: 'Well, I will see what I can do. I do not think it is the proper time now to talk about a lease. Wait until you take title, or near the time of taking title, and then I think it will be the proper time to talk about making a lease with Dr. Miller.' Q. When did you subsequently see Mr. Meyer about this lease? A. I did not see Mr. Meyer until after they took title, which, I think, was in about 30 days."

Meyer swore positively that the foregoing alleged conversation never took place. Plaintiff further testified that after title had been passed he conversed with Meyer over the telephone in reference to the terms of the proposed lease to Dr. Miller. Meyer denied that he had any conversation with plaintiff over the telephone on the subject of the lease, at the time stated by plaintiff or any other time, and made oath that he left this country for France not later than May 16, 1906, and that he never saw Coogan and never spoke to him after the signing of the contract of purchase, April 27, 1906. When it is remembered that no claim was made for the alleged services for more than six months after the plaintiff asserts they were rendered, and all the evidence and probabilities are considered, we think it cannot well be said that plaintiff sustained the burden of establishing his employment by Meyer by a fair preponderance of evidence.

On the second question we incline to the view that Meyer's relations to the property and the defendant were such that, although both Meyer and Beller testify that no express authority was conferred upon Meyer to lease the property, in the light of all the evidence it may be

properly said that Meyer's acts in the matter of leasing should bind the defendant.

On the third issue we are of the opinion that the plaintiff plainly failed to sustain the burden. The plaintiff repeatedly swears, both upon direct and cross examination, that his efforts in bringing about the lease to Dr. Miller were made after June 1, 1906, when the title passed. Meyer had sailed for Europe not later than May 16, 1906, and, as appears from exhibits in the record, which stand unimpeached, the lease had been fully agreed upon in writing between Dr. Miller and the defendant on May 11, 1906. The closing testimony upon the trial was given by the plaintiff, and consisted of an effort to change the dates he had so positively asserted, and make the time of alleged efforts consistent with the agreement of May 11th and the departure for Europe of Mr. Meyer. The witness was aided in this by leading questions from his counsel; but the attempt was feeble and ineffectual, and the result unsatisfactory. There is credible evidence tending to show that Mr. Adams, the defendant's lawyer, was largely instrumental in procuring the lease. The plaintiff's testimony as a whole, considered in the light of all the other testimony in the case, is entitled to little, if any, weight.

We reach the conclusion that the judgment should be reversed as against the weight of evidence.

Judgment reversed, and new trial ordered, with costs to appellant to abide the event.

SEABURY, J., concurs.

DAYTON, J. I dissent, and vote for affirmance. The record fails to disclose reversible error. The learned trial judge might well have found, as he did, that plaintiff sustained the burden of proof.